**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

COACH, INC. and COACH SERVICES, INC.,

Plaintiffs,

v.

1941coachoutletstore.com, *et al*,

Defendants.

Case No. 11-cv-309

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR ENTRY OF DEFAULT JUDGMENT AGAINST IDN DEFENDANTS AND RELATED ORDER**

Plaintiffs Coach, Inc. and Coach Services, Inc. (collectively, "Coach"), pursuant to Fed. R. Civ. P. 55(b)(2), file this memorandum in support of their Motion for Entry of Default Judgment and Related Order against the Infringing Domain Name Defendants (hereinafter referred to as the "IDN Defendants"), and respectfully state as follows:

## I. BACKGROUND

Coach brings this action in order to prevent the unlawful and wrongful use of domain names - "cyber-squatting" - that incorporate and otherwise depict Coach's exclusive trademarks. Each of the IDN Defendants intend to trade and are trading upon Coach's reputation as a luxury goods retailer, and upon the goodwill that Coach has developed in the marketplace, in order to sell and/or offer for sale counterfeit products featuring Coach's famous trademarks. In doing so, each of the IDN Defendants have caused and will continue to cause irreparable harm to Coach through consumer confusion and the dilution and tarnishment of Coach's valuable trademarks.

Each of the IDN Defendants, in flagrant disregard for the procedures of this Court, have failed to appear in response to valid service of process effected upon them. Because each of the

IDN Defendants have failed to appear, answer, or otherwise defend this matter, Coach now seeks entry of default judgment and an order transferring the Infringing Domain Names to the exclusive ownership and control of Coach.[1]

**A. Plaintiff Coach**

Coach was founded seventy (70) years ago as a family-run workshop in Manhattan. Since then, Coach has been engaged in the design, marketing and sale of fine leather and mixed material products including handbags, wallets, accessories, eyewear, footwear, jewelry and watches. (Compl., p. 85.) Coach sells its goods through its own specialty retail stores, department stores, catalogs, and via its website www.coach.com throughout the United States, including in Virginia. (Id.) Coach has used a variety of legally-protected trademarks, trade dress, design elements, and copyrights for many years on and in connection with the advertisement and sale of its products, including but not limited to, those detailed in its Complaint (collectively, the "Coach Trademarks"). (Id.)

Coach has expended substantial time, money, and other resources in developing, advertising, and otherwise promoting the Coach Trademarks. (Id.) As a result, products bearing the Coach Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being high quality products sourced from Coach, and have acquired strong secondary meaning. Coach products have also become among the most popular in the world, with Coach's annual global sales currently exceeding three billion dollars ($3,000,000,000). (Id.)

---

[1] As a result of the default entered against the IDN Defendants due to their collective failure to contest or defend this matter, the allegations of the Complaint are deemed admitted. See Jack in the Box v. JACKINTHEBOX.ORG, 143 F. Supp. 2d 590, 592 (E.D. Va. 2001); see also supporting declarations and exhibits thereto.

Coach is the owner of a number of United States Federal Trademark Registrations, all of which are valid, subsisting, in full force and effect, and which have become incontestable pursuant to 15 U.S.C. §1065.[2] (Id.) The Coach Trademarks are unique and distinctive when applied to the high quality leather and mixed material goods, handbags and related merchandise, and identify the merchandise as high-quality goods from Coach. (Id.) The registration of these marks constitutes *prima facie* evidence of their validity, and conclusive evidence of Coach's exclusive right to use the Coach Trademarks in connection with the goods identified therein and other commercial goods. (Id.)

The Coach Trademarks qualify as famous marks, as that term is used in 15 U.S.C. § 1125(c)(1), and have been continuously used and never been abandoned. (Id.) Coach products are widely accepted by the public and are enormously popular, as demonstrated by the billions of dollars in sales of Coach products each year. (Id.)

**B. The IDN Defendants**

The websites maintained by Infringing Domain Names are confusingly similar to the Coach Trademarks, consisting in part of Coach's world famous and registered Trademarks combined with various generic words or letters. (Compl. at p. 87). The Infringing Domain Names have been and are currently being used to host commercial websites, respectively, that offer for sale and/or sell counterfeit and/or infringing goods bearing the Coach Trademarks and/or Coach Marks to the general public. (Compl. at p. 86.) The Infringing Domain Names have been designed to lure unsuspecting consumers into purchasing counterfeit merchandise bearing the Coach Trademarks. (Id.) The registrants of the IDN Defendants did not respond to and/or ceased communication with Coach in response to cease and desist letters served upon

[2] All registrations originally held in the name of Coach's predecessors, Sara Lee Corporation and Saramar Corporation, were assigned in full to Coach on or about October 2, 2000.

them prior to this litigation. (Id.) Thus, the unlawful use of the Infringing Domain Names and the sale of counterfeit merchandise infringing the Coach Trademarks continues unabatted. (Id.)

### *1. This Court Has Jurisdiction Over Each of the IDN Defendants and Subject Matter Jurisdiction Over the Matters at Issue*

This Court has *in rem* jurisdiction over each of the IDN Defendants pursuant to 15 U.S.C. § 1125(d)(2)(A)(ii)(II). (Compl. at 8.) Likewise, this Court has *in rem* jurisdiction over each of the IDN Defendants pursuant to 15 U.S.C. § 1125(d)(2)(A)(ii)(I) because the registrants of each of the IDN Defendants is located outside of the United States and are not subject to personal jurisdiction in the United States. ((Id.); Motion for Order Authorizing Service of Process by Publication ("Publication Motion") at p. 3.) *In rem* jurisdiction is also proper because, through due diligence, Coach was not able to locate and/or identify a person who would have been a defendant in a civil action under 15 U.S.C. § 1125(d)(1) and has sent notice to the registrants of the Infringing Domain Names, pursuant to 15 U.S.C. § 1125(d)(2)(A)(ii) (II) (aa). (Id.) The domain name registries for the Infringing Domain Names - VeriSign, Inc. ("VeriSign"), the Public Interest Registry ("PIR"), and Neustar, Inc. ("Neustar") - are located in this judicial district. (Compl. at p. 9.)

Specifically, of the three hundred sixty (360) Infringing Domain Names, two hundred ninety-nine (299) have a Top-Level Domain ("TLD") of <.com>, twenty-nine (29) have a TLD of <.net>, twenty (20) have a TLD of <.org>, eleven (11) have a TLD of <.us>, and one (1) has a TLD of <.biz>. The registry for those IDN Defendants with a TLD of <.com> or <.net> is VeriSign, which maintains its principal place of business at and operates from 21355 Ridgetop Circle, Dulles, Virginia 20166. VeriSign is located within the jurisdiction of this Court.

The registry for those IDN Defendants with a TLD of <.org> is PIR, which maintains its principal place of business at and operates from 1775 Wiehle Avenue, Suite 200, Reston, Virginia 20190. PIR is located within the jurisdiction of this Court.

The registry for those IDN Defendants with a TLD of <.us> or <.biz> is Neustar, whose corporate headquarters is located at 21575 Ridgetop Circle, Sterling, Virginia 20166. Like PIR and VeriSign, Neustar is also located within the jurisdiction of this Court.

Thus, *in rem* jurisdiction is proper in this district pursuant to 15 U.S.C. § 1125(d)(2)(C)(i) because the domain name registries for the Infringing Domain Names are located in this judicial district.

***2. Service was Properly Effected as to Each of the IDN Defendants***

Pursuant to 15 U.S.C. §§ 1125(d)(2)(A)(ii)(II)(aa-bb), service of process for *in rem* actions shall be complete upon:

> (aa) sending a notice of the alleged violation and intent to proceed under this paragraph to the registrant of the domain name at the postal and e-mail address provided by the registrant to the registrar; and
>
> (bb) publishing notice of the action as the court may direct promptly after filing the action.

Coach filed, on July 6, 2011, its Motion for Order to Publish Notice of Action. [Dkt. No. 26.] On or about July 8, 2011, the Court granted Coach's motion. [Dkt. No. 28.] In addition to providing notice of this suit by publication in *The National Law Journal/The Legal Times* as ordered by the Court (see Dkt. No. 30-1), Coach also provided, on or about May 15, 2011, notice of this suit via email and U.S. postal mail. [Dkt. No. 27-1, Cole Declaration.] By the acts described herein, Coach has properly effected service upon each IDN Defendant.

**C. This Action**

Coach filed its initial complaint in this action on March 25, 2011, alleging violation of

the Anti-cybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. §§ 1125(d), *et seq*., and seeking *in rem* injunctive relief in the form of a transfer of each of the Infringing Domain Names to the ownership and control of Coach. [See Dkt. No. 1.] Coach then filed its first amended complaint on April 1, 2011. [Dkt. No. 2.] In response to certain concerns raised by this Honorable Court on April 29, 2011, and in order to better facilitate the management of this action, Coach filed, on July 1, 2011, its second amended complaint ("Complaint") naming the current IDN Defendants[3]. [See Dkt. No. 25.]

Specifically, Coach's Complaint addressed the Court's concerns by removing fifty-eight (58) infringing domain name defendants due to the domicile of their respective registries, as well as identifying eleven (11) separate, yet common groups. [See Dkt. No. 25.] After analyzing the WHOIS information for each of the three hundred sixty (360) Infringing Domain Names, Coach determined that not only did each IDN Defendant utilize inaccurate and unreliable contact information, which is essential to providing the protection for trademark owners such as Coach, but that similarities among the IDN Defendants indicate that certain of the IDN Defendants are operated by the same registrant(s). Further, upon information and belief, those registrants are part of a larger network of operators of infringing domain name whose single goal is to sell and offer for sale counterfeit luxury products while exploiting the general public.

After the Court granted Coach's motion to serve via publication, the IDN Defendants were then served via the weekly publication, *The National Law Journal/The Legal Times*, on or about July 25, 2011. [See Dkt. No. 30.] Coach received no response from or on behalf of the registrants of the IDN Defendants. Thereafter, Coach filed the Proof of Service with the Court, and the Clerk entered the IDN Defendants' default on or about August 29, 2011. [See Dkt. No.

[3] The Complaint seeks an injunction enjoining the operators of the IDN Defendants from continuing their use of Coach's trademarks, as well as an order transferring the IDN Defendants to Coach.

35.] At no time has any party asserting rights in or to the IDN Defendants entered an appearance or otherwise defended this action, and the time to do so has expired. [See Dkt No. 30.] Pursuant to Federal Rule of Civil Procedure 55(b)(2), Coach now moves this Court for an Order entering default judgment, and transferring the Infringing Domain Names to Coach, as authorized by the ACPA. See 15 U.S.C. §§ 1125(d)(2)(D).

## II.   ARGUMENT

### A.   Coach Has Met The Procedural Requirements for Entry of a Default Judgment

Federal Rules of Civil Procedure Rule 55(b) provides for a court-ordered default judgment following entry of default by the court clerk under Rule 55(a). As noted, on or about July 25, 2011, Coach served the registrants of the IDN Defendants via publication in the weekly publication, *The National Law Journal/The Legal Times*, pursuant to the Court's Order of July 8, 2011. An Affidavit of Publication was then filed with the Court. [Dkt. No. 30.] Despite ample time to respond, no answer or other responsive pleading has been filed by an IDN Defendant, and on August 29, 2011, the clerk of the Court entered default against the IDN Defendants. [Dkt. No. 35.] Default having been entered, default judgment is now appropriate, and Coach requests transfer of the IDN Defendants, as stated in its Complaint.

### B.   Coach's Complaint Sufficiently Pleads a Claim of Cyber-squatting

The ACPA provides that a party is liable to a trademark owner if that party, in bad faith, intends to profit from the trademark owner's mark and the party registers, traffics in, or uses a domain name that is identical or confusingly similar to or dilutive of that mark. 15 U.S.C. § 1125(d)(1)(A); see also Agri-Supply Co., Inc. v. Agrisupply.com, 457 F. Supp. 2d 660, 662-63 (E.D. Va. 2006). Due to the IDN Defendants' failure to defend this action, and the subsequent default entered against the IDN Defendants, all of the allegations contained in Coach's

Complaint are deemed admitted.  See FED. R. CIV. P. 8(b)(6); see also Jack in the Box v. JACKINTHEBOX.ORG, 143 F. Supp. 2d 590, 592 (E.D. Va. 2001) ("[s]ince this civil action is in default, the facts as stated in the complaint are deemed admitted and true.").  Coach's Complaint pleads both the bad faith intent of the IDN Defendants to profit from the Coach Trademarks and Coach's reputation, the identical and/or confusingly similar nature of the IDN Defendants to Coach's Trademarks, the IDN Defendants' use of similar methods and processes, and their unified goal in causing and continuing to cause substantial and irreparable injury to both the public and to Coach.  (See Compl. at p. 87.)

Further, the bad faith intent to profit and confusingly similar nature of the IDN Defendants are both evident from the Infringing Domain Names themselves and their related websites.  Compare, e.g., www.coach.com with www.coachsoutlet.com and www.coachsoutlet-shop.com (last visited September 23, 2011).  The first of the following screen shots is the authentic Coach website, while the subsequent two (2) are of representative IDN Defendant websites:

Coach Online Store - Discount Coach Free Shipping On Over $150!! No Purchase Tax. - Buy! - Windows Internet Explorer
http://www.coachsoutlet-shop.com/
2010 New arrival promotion, Free shipping over $ 150, Buy 3 handbags, Compliment one free delicate Gift!
home | register | login | my account | order tracking | 0 item(s)
Categories
2010 BEST SELL
COACH WALLETS
NEW ARRIVALS
HOT SALE COACH
COACH BAGS
COACH LEATHER
COACH POPPY
COACH SHOES
COACH JEWELRY
ACCESSORIES
POPPY

Coach Outlet Stores Online - Free Shipping with 60% off - Windows Internet Explorer
http://www.coachsoutlet.com/
Home
Login/Register
Cart
Favorite
COACH LEATHERWARE
EST. 1941
Categories
New Arrivals
New Bags For July
Coach Hot Sales
Coach Handbags
Coach Sling Bags
Coach Backpacks
Coach Business Bags
Coach Luggages Bags
View All Handags
Coach Wallets
Coach Wallets
poppy PRINTS
are you POPPY?
all that glitters
Wallets& Card cases
New Arrival
Coach Handbags
MOST

The bad faith intent to wrongfully profit from the Coach brand and the confusingly similar nature of the websites is undeniable. Further, the ACPA also lists several, non-exhaustive factors that the Court may consider in determining bad faith, including, but not limited to:

> (V) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;
>
> ***
>
> (VIII) the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties; and,
>
> ***
>
> (IX) the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of subsection (c).

15 U.S.C. § 1125(d)(1)(B)(i).

Each of the IDN Defendants incorporates the term COACH, a world-famous trademark, in its entirety, simply combining the Trademark with generic word(s) or letters, many of which refer to the business in which in Coach operates or other Coach Trademarks[4]. The registrants of the IDN Defendants have done so in order to divert consumers away from Coach's legitimate website, and each of the IDN Defendants at one point resolved (and some still currently resolve) to websites advertising and offering for sale counterfeit products featuring Coach's Trademarks. [See Dkt. No. 26, Publication Motion.]

---

[4] Attached as Exhibit A are true and correct copies of screen shots for the Infringing Domain Names, and/or as well as the WHOIS information sheets. Exhibit A will be filed with this Court on September 26, 2011 on a compact disc, given its size. The disc and is organized by each of the eleven (11) IDN Defendant groups.

Thus, it is clear that the IDN Defendants are confusingly similar and possess bad faith intent to profit from Coach's Trademarks. Registration of the IDN Defendants therefore constitutes cyber-squatting under the ACPA.

**C. The Infringing Domain Names Should Be Transferred to Coach**

Pursuant to the ACPA, the remedy for an *in rem* proceeding is either the forfeiture or cancellation of the domain name(s) or transfer of the domain name(s) to the owner of the mark. 15 U.S.C. § 1125(d)(2)(D)(i). Because the domain name registries for each of the IDN Defendants - VeriSign, PIR, and Neustar - are located within this judicial district and thus subject to the Court's jurisdiction, this Court may properly enter a default judgment and order VeriSign, PIR, and Neustar to transfer the Infringing Domain Names to the exclusive ownership and control of Coach. See, e.g., America Online, Inc. v. AOL.org, 259 F. Supp. 2d 449, 453-455 (E.D. Va. 2003) (discussing the scope of a court's order to a registry with respect to the transfer of a domain name).

**D. Coach Has Properly Joined Each of the IDN Defendant Groups in this Single Action**

Federal Rule of Civil Procedure 20(a) provides, in relevant part, as follows:

> All persons . . . may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, *or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action*. (emphasis added.)

See Hinson v. Norwest Fin. S. Calorlina, 239 F.3d 611, 618 (4th Cir. 2000) (explaining that "Rule 20(a) permits the joinder of parties if they claim relief 'arising out of the same transaction, occurrence, or series of transactions or occurrences, and if any question of law or fact common to all these persons will arise in the action.'") While some courts have held that "merely committing the same type of violation in the same way does not link defendants together for the purposes of joinder" (Laface Records, LLC v. Does 1-38, 2008 WL 544992, at *2

(E.D.N.C. Feb. 27, 2008)), Coach's allegations, when considered in conjunction with the legislative history of the ACPA, support that maintaining a single action against the IDN Defendant groups is appropriate.

As noted in the legislative history of the ACPA:

> [w]ith each new medium, there instantly arise a cross-section of entrepreneurs, flim-flam persons, snake oil salesmen and others whose ingenuity and larceny are often the source of marvel, at least to those who are not being hurt. For intellectual property owners who are the subject of much of the chicanery of the commercial Net, the international nature of the Internet raises new challenges. Balancing privacy rights fairly and yet being able to find the perpetrators and have an effective and uniform method to deal with the bad-faith use of trademarks or domain names on the Internet, and, finding an economical and effective system for dealing with international intellectual property disputes that may cross-cut many national borders, is a very important part of the structure of the Internet required to be put in place to allow the commercial development of the Net to go forward in an orderly and dynamic manner.

2 Anti-cybersquatting Consumer Protection Act: A History of Public Law No. 106-113 Appendix I, 113 Stat. 57 (2002).

Unlike the defendant Does in Laface Records, LLC, the Defendants in this action, and defendants in the majority of ACPA actions, purposefully hide, obfuscate and lie about their location and/or identity. Plaintiffs were able to identify the defendants via their IP addresses in Laface Records. 2008 WL 544992, at *1. However, in the instant matter, Coach has taken every reasonable, practicable and logical step in identifying and ascertaining the true relationship amongst the IDN Defendant groups, but is unable to do so due to the purposeful obfuscation of the IDN Defendants.

Moreover, maintaining the instant case as a single action is supported by jurisprudence. See e.g., Alford Safety Services, Inc. v. Hot-Hed, Inc., 10-cv-1319, 2010 WL 3418233 (E.D. La. Aug. 24, 2010) (while focusing on the permissive nature of Rule 20, the court found joinder proper where a common underlying issue existed, i.e., patent infringement of the same patents);

see also Mymail, Ltd. v. America Online, Inc., 223 F.R.D. 455, 458 (E.D. Tex. 2004) (judicial efficiency and the risk of inconsistent rulings militates in favor of maintaining a consolidated action); see also Deckers Outdoors Corp. v. 09uggaustralia.com, No. 10-cv-1413-AJT-TRJ (E.D. Va. Dec. 15, 2010); Nike, Inc. v. NikePioneer.com, No. 10-cv-0090-JCC-TCB (E.D. Va. Jan. 28, 2010); Yahoo!, Inc. v. Yahooahtos.com, 2006 WL 2303166 (E.D. Va. Aug. 8, 2006); U.S. Olympic Comm. v. 2000Olympic.com, No. 00-cv-1018-CMH (E.D. Va. June 20, 2000). The same analysis holds true in the instant matter, in that severing three hundred sixty (360) separate claims – or eleven (11) separate groups of claims – risks inconsistent rulings.

Finally, it should be noted that upon this Court entering an order transferring the Infringing Domain Names to Coach, Coach intends to maintain the Infringing Domain Names' accessibility, but will replace the website with the following warning: "This website was shut down for selling counterfeit merchandise. Please visit Coach.com to purchase authentic Coach Products." (See, e.g., recently transferred infringing domain name, www.coachbagsoutlets.com, a true and correct copy of attached hereto as Exhibit A.)

***1. Transaction or Occurrence***

The "transaction or occurrence test" of Rule 20, "would permit all reasonably related claims for relief by or against different parties to be tried in a single proceeding. Absolute identity of all events is unnecessary." Saval v. BL Ltd., 710 F.2d 1027, 1031 (4th Cir. 1983) (emphasis added). Additionally the "transaction or occurrence" test "should be construed broadly." Advamtel, LLC v. AT&T Corp., 105 F. Supp. 2d 507, 514 (E.D. Va. 2000). "'Transaction' is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship." Moore v. New York Cotton Exchange, 270 U.S. 593, 610 (1926)); see also

Directv, Inc. v. Boggess, 300 F. Supp. 2d 444, 449 (S.D. W. Va. 2004) ("The same transaction and common question requirements should be 'liberally construed in the interest of convenience and judicial economy.'").

In Mymail, Ltd., the court refused to sever the claims against a subset of defendants in a patent infringement matter. Specifically, the court held:

> [d]efendants advocate a rule that requires separate proceedings simply because unrelated defendants are alleged to have infringed the same patent. The court disagrees with such a per se rule that elevates form over substance. Such an interpretation does not further the goals of Rule 20, especially for discovery and motion purposes. 223 F.R.D. at 457 (emphasis added).
>
> ***
>
> [t]he joinder rules were created to increase judicial efficiency by allowing related claims against different parties to be tried together. "Under the [Federal Rules of Civil Procedure], the impulse is toward entreating the broadest possible scope of action consistent with fairness to the parties; joinder of clams, parties and remedies is strongly encouraged. 223 F.R.D. at 457-58 (citations omitted).
>
> ***
>
> The prospect of inconsistent claim construction favors resolving related patent cases in the same forum when possible. Besides being a duplicative use of scarce judicial resources, two claim constructions risk inconsistency, create greater uncertainty regarding the patent's scope, and impede the administration of justices. Severing the UOL Defendants would decrease judicial efficiency by requiring duplicitous claim constructions, discovery, and pretrial motions. 223 F.R.D. at 457 (citations omitted).

The basic allegation against the registrants of the IDN Defendant groups is that they have each committed the illegal act of cyber-squatting, using the same means and having the same purpose in committing the illegal act, and concealing the wrongful acts of the other registrants of the IDN Defendant groups. Even further, the registrants of the IDN Defendant groups are intimately linked, if not actually one in the same person(s)/entitie(s). For example, while each registrant's name is different for the Infringing Domain Names in the "Foreignness Group" (one

of the eleven (11) groups of IDN Defendants in the instant action), each of the Infringing Domain Names registrants list "Foreignness" as part of their postal addresses. Additionally, the similarities of the Infringing Domain Names and their appearance and composition establish that they are all operating as part of the same transaction or occurrence.

Similarly, the majority of the registrant's names and address used in the "Hong Kong Group" are, like the "Foreignness Group", the same, utilizing either "Merry Liny" or "Liny Merry" as the listed registrant. A comparison of the similarities can be seen in the 173916647@qq.com group, as that email address is listed as the email and/or logogram in the Infringing Domain Name's postal mail.

Thus, the IDN Defendant groups form part of a series of connected occurrences, i.e., a common, concealed intent to commit the illegal act of offering counterfeit Coach merchandise for sale via the Infringing Domain Names. See 7 CHARLES ALAN WRIGHT, ARTHUR R. MILLER, MARY KAY KANE & RICHARD L. MARCUS, FEDERAL PRACTICE AND PROCEDURE § 1653 (3d ed. 1998 with 2011 update) ("The logical-relationship test employed under Rule 13(a) seems consistent with the philosophy underlying the passage in Rule 20 that allows joinder of parties whenever the claims arise out of 'the same series of transactions or occurrences.' Moreover, the flexibility of this standard enables the federal courts to promote judicial economy by permitting all reasonably related claims for relief by or against different parties to be tried in a single proceeding under the provisions of Rule 20.") (emphasis added); Mymail, Ltd., 223 F.R.D. at 456 ("The Court disagrees with such a per se rule that elevates form over substance. Such an interpretation does not further the goals of Rule 20, especially for discovery and motion purposes.").

Moreover, the registrants of each of the IDN Defendant groups are alleged – a fact now deemed true due to the IDN Defendants' default – to have utilized the same method and process of creating the infringing websites to illegally offer for sale and/or sell counterfeit and/or infringing merchandise to the general public that bear the Coach Trademarks. Specifically, they each have deliberately provided false and inaccurate contact information in the creation of the infringing domains in order to further their illegal conduct and to escape being identified and prosecuted for their unlawful activities. This is precisely the type of conduct the ACPA was enacted to prevent. See 2 Anti-cybersquatting Consumer Protection Act: A History of Public Law No. 106-113 Appendix I, 113 Stat. 57. Finally, like the defendants in Mymail, Ltd. whose methods or products were not "dramatically different," the IDN Defendants all utilize the same modus operandi in furthering their illegal activity.

***2. Law or Facts Common to the IDN Defendant Groups***

Federal Rule of Civil Procedure 20 does not require that all questions of law and/or fact be identical for each defendant where a right of relief is asserted. Instead, Rule 20 requires only either one question of law *or* one fact that is common for joinder to be appropriate. Rule 20(a) provides that "all persons . . . may be joined in one action as defendants if . . . any question of law *or* fact common to all of defendants will arise in the action." DirectTV, Inc. v. Adkins, No. 03-cv-00064, 2003 WL 23096482 (W.D. Va. Dec. 29, 2003) (emphasis added) (joinder of all parties in case was proper where plaintiff did not allege that each defendant acted in concert or that they knew of each others' conduct, but instead alleged that each defendant purchased multiple signal theft devices for the same purpose and evidence at trial as to each defendant would be substantially the same.).

In the case at hand, each and every allegation (and the requested relief), brought against each individual IDN Defendant and every group of IDN Defendants, share not only one common fact, but multiple core common facts which are foundational prerequisites to the claim brought against each and every group of IDN Defendant. The claim for relief shares the following foundational facts: the IDN Defendant groups: (1) all sell counterfeit Coach merchandise; (2) have a similar layout and design; (3) use consistent information and patterns in their WHOIS contact information; and (4) sell similar counterfeit Coach products. See First Time Videos, LLC v. Does 1-76, 11-cv-3831, 2011 WL 3586245 (N.D. Ill. Aug. 16, 2011) (finding joinder of multiple unnamed defendants was appropriate on the theory that if litigated, "the factual inquiry into alleged copyright infringements will be substantially identical" and "the methods used to investigate, uncover and collect evidence about any infringing activity will be the same as to each Doe defendant.").

Moreover, the facts of this case also establish that: (1) counterfeiting is an illegal, multi-billion dollar business that injures the public by deceiving unsuspecting individuals and lures them into buying goods that they believe are genuine, but that are, in fact, counterfeit goods of inferior quality and dubious, if not dangerous, origins; (2) Coach is harmed through lost income and the loss of the goodwill and dilution of its brand; (3) the sale of goods via the Internet by the groups of IDN Defendants has enabled counterfeiters across the globe to reach across national borders in order to sell their nefarious goods on a global scale; and, (4) the Internet has also, unfortunately, afforded the registrants of the groups of IDN Defendants anonymity and the ability to avoid civil and criminal liability for their activities. See Mymail, Ltd., 223 F.R.D. at 455 (finding the legal question of infringement of the same patent sufficiently common to all

defendants, and further finding that plaintiff's allegation that the defendants had utilized shared resources with other defendants to be a common question of fact).

Nonetheless, even *if* this action did not involve common questions of fact, joinder is appropriate because this action involves questions of law that are common to all Defendants. See FED. R. CIV. P. 20. As noted above, Rule 20 merely requires the presence of common questions of either fact *or* law. In this case, not only does this action involve common questions of fact, but Coach's complaint also raises several legal questions underlying the claims against the IDN Defendants: (1) the enforcement of Coach's exclusive rights to the Coach Trademarks attached as an exhibit to the Complaint; (2) the applicability of the ACPA to "cybersquatting"; and, (3) protection of Coach's Trademarks pursuant to 15 U.S.C. §1125(c)(1). (See Compl. at pp. 86-87.) Thus, joinder of the IDN Defendants is appropriate due to the common questions of law raised in this action. See id.; see also Mymail, Ltd., 223 F.R.D. at 455; United Mine Workers v. Gibbs, 383 U.S. 715 (1966); DataTreasury Corp. v. First Data Corp., 243 F. Supp. 2d. 591 (N.D. Tex. 2003).

### ***3. Judicial Economy Militates Against Severing each IDN Defendant Group Because Doing so would be Burdensome, Inefficient and Unmanageable***

Federal Rule of Civil Procedure 20 must be "construed in light of its purpose, which 'is to promote trial convenience and expedite the final determination of disputes, thereby preventing multiple lawsuits.'" Saval, 710 F.2d at 1031 (internal citations omitted). In the case at hand, considering all allegations – which are deemed facts for the purposes of the remainder of this litigation - and the injunctive relief sought by Coach in one lawsuit would enhance judicial economy, consistent with the purpose of Rule 20. Conversely, severing the groups of IDN Defendants, or more problematic yet – each individual IDN Defendant, would result in many multiple suits pertaining to the same series of transactions and occurrences, and would result in

significant waste of judicial and other resources. See Call of the Wild Movie, LLC v. Does 1-1,062, 770 F. Supp. 2d 332, 344 (D.D.C. 2011) (finding that it would further limit the plaintiffs' "ability to protect their legal rights" and was not in the "'interests of convenience and judicial economy,' or 'secure a just, speedy, and inexpensive determination of the action'" to force plaintiffs to file 5,583 separate lawsuits and paying the Court separate filing fees in each of those cases). Requiring Coach to file separate cases against individual IDN Defendants or groups of IDN Defendants, none of which has appeared in this matter or contacted Coach regarding the litigation, would (1) result in the court being inundated with individual suits seeking identical relief[5], (2) place undue hardship on Coach by requiring that they incur duplicative legal fees in seeking relief under the ACPA[6], and (3) vitiate the ACPA by making its enforcement so cumbersome and expensive as to be prohibitive.

## III. CONCLUSION

For the foregoing reasons, Coach, Inc. and Coach Services, Inc. respectfully request that the Court grant this Motion and order transfer of the Infringing Domain Names to Coach, Inc., and any other relief the Court deems appropriate.

Dated: September 23, 2011

Respectfully submitted,
BRYAN CAVE LLP

By: ________/s/ ________
P.J. Meitl (Bar ID 73215)
S. Patrick McKey (admitted *pro hac vice*)
Donald A. Cole (admitted *pro hac vice*)
BRYAN CAVE LLP

[5] Based on counsel for Coach's review, it appears that there are approximately 1,000 civil cases filed each year in the Eastern District of Virginia, Alexandria Division. The filing of 360 individual suits would, therefore, result in a 36% increase in the Court's docket.

[6] In filing fees, alone, it would cost Coach $3,850 if Coach were required to initiate 11 separate, yet similar proceedings, or $126,000 if Coach were required to initiate 360 separate, yet similar proceedings, based on the current filing fee of $350.00.

                    1155 F Street, N.W.
Washington, D.C. 20004
Telephone: (202) 508-6000
Facsimile: (202) 508-6200
pj.meitl@bryancave.com
patrick.mckey@bryancave.com
donald.cole@bryancave.com

Attorneys for Coach, Inc. and
    Coach Services, Inc.