IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

NOV 2 5 2011

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

COACH, INC., *et al.*,              )
                                    )
        Plaintiffs,                 )
                                    )
    v.                              )    Civil Action No. 1:11cv0309 (JCC/JFA)
                                    )
1941 COACHOUTLETSTORE.COM,          )
*et al.*, each an Internet Domain Name,  )
                                    )
        Defendants.                 )
_____)

## PROPOSED FINDINGS OF FACT AND RECOMMENDATIONS

This matter is before the court on plaintiffs' motion for entry of final judgment, amended

motion for entry of final judgment, and motion for entry of default judgment pursuant to Fed. R.

Civ. P. 55(b)(2). (Docket nos. 36, 37, 41). In this *in rem* action currently involving 356 domain

names (the "domain names"), the plaintiffs Coach, Inc. and Coach Services, Inc. (collectively

"Coach") seek a default judgment ordering that the registries for the domain names require the

registrars for the domain names to transfer the registrations for the domain names to Coach or its

assignee. Pursuant to 28 U.S.C. § 636(b)(1)(C), the undersigned magistrate judge is filing with

the court his proposed findings of fact and recommendations, a copy of which will be provided

to all interested parties.

## Procedural Background

On March 25, 2011, Coach filed its complaint for injunctive relief against 419 defendant

domain names pursuant to the *in rem* provisions of the Anticybersquatting Consumer Protection

Act, 15 U.S.C. § 1125(d) ("ACPA"). (Docket no. 1) ("Compl."). On April 1, 2011, Coach filed

an amended complaint naming 473 domain names as defendants. (Docket no. 2) ("Amend.

Compl."). On April 8, 2011, Coach filed an *ex parte* motion for order authorizing service of

process by e-mail ("motion for service by e-mail") along with a memorandum in support and a

notice of hearing date for April 22, 2011. (Docket nos. 3, 4, and 5). On April 11, 2011, the

undersigned issued an order advising Coach that

> counsel for the plaintiffs should be prepared to discuss at the
> hearing on this motion issues of joinder and jurisdiction.
> Specifically, counsel for the plaintiffs should be prepared to
> present argument as to why it is proper to join over 400 domain
> name defendants in a single action and the factual bases for the
> allegations that Verisign, Inc. is the registry for the domain name
> defendants with TLDs [top level domains] other than <.com> and
> <.net>.

(Docket no. 6). On April 20, 2011, Coach filed a request for change in hearing date, seeking to

continue the hearing on its motion for service by e-mail until April 29, 2011. (Docket no. 12).

Coach sought the continuance to allow for the filing of a supplemental memorandum on the

questions of joinder and jurisdiction raised in the April 11, 2011 order and to schedule the

hearing for the same day as the hearing on Coach's motion for preliminary injunction ordering

the transfer of the defendant domain names (Docket no. 7) ("motion for preliminary injunction")

before the District Judge. (*Id.*). The court granted Coach's motion to continue (Docket no. 13)

and Coach filed a supplemental position paper (Docket no. 14) and a notice of supplemental

authority (Docket no. 18) on April 26, 2011 and April 28, 2011, respectively. On April 29, 2011,

Coach's motion for service by e-mail was denied and Coach was given leave to file a second

amended complaint. (Docket no. 20). The same day, the District Judge reset the hearing on

Coach's motion for preliminary injunction to June 3, 2011 in consideration of the order granting

Coach leave to file a second amended complaint. (Docket no. 22).

At the hearing on April 29, 2011, the undersigned voiced concern that it appeared from

the pleadings that Coach was not paying individual attention to each of the domain names named

2

in its amended complaint, specifically addressing the allegations that all of the domain names shared the same registry when in fact Coach conceded they did not. (Docket no. 23 at 4-6). As to whether it was appropriate to join all of the domain names in the amended complaint in one action, Coach first conceded that four domain names should not have been incorporated in the amended complaint and then went on to argue that a number of the websites located at the defendant domain names ("but not necessarily all of them") sold "the same or similar goods," and that the websites were apparently "run by the same entity . . . or small number of entities." (Docket no. 23 at 6-7). In response, the undersigned nevertheless pointed out that each defendant domain name needed to be considered separately. (Docket no. 23 at 8). The undersigned also indicated that based on the averments in the amended complaint it appeared that Coach had failed to make a showing that all of the domain names had any connection to one another other than the alleged infringement of Coach's registered marks. (Docket no. 23 at 9).

On July 1, 2011, Coach filed a second amended complaint against 360 defendant domain names. (Docket no. 25) ("Second Amend. Compl."). In the second amended complaint, Coach divided the domain names into 11 "sub-groups": (1) the "Shanghai Group" (12 domain names); (2) the "Guangdong Group" (42 domain names); (3) the "Foreignness Group" (15 domain names); (4) the "United States Group" (66 domain names); (5) the "Fujian Group" (128 domain names); (6) the "Hong Kong Group" (14 domain names); (7) the "Zhengzhou Group" (16 domain names); (8) the "Beijing Group" (28 domain names); (9) the "173916647@qq.com Group" (nine domain names); (10) the "@123 Group" (five domain names); and (11) the "@qq.com Group" (25 domain names). (Docket no. 25 at ¶¶ 11-21).

On July 6, 2011, Coach filed an *ex parte* motion for order to publish notice of action and a memorandum in support. (Docket nos. 26 and 27). On July 8, 2011, an order was entered

directing Coach to provide notice of this action by publication in accordance with the ACPA.

(Docket no. 28).  The order providing notice of this action was published in *The National Law*

*Journal* on July 25, 2011, and on August 4, 2011 Coach filed with the court an affidavit

describing compliance with the order directing publication of notice of this action.  (Docket no.

30).  Other than the claims made by Coach, no response, claim, or other pleading has been filed

asserting any rights in any of the domain names.

On August 18, 2011, Coach filed its request for entry of default (Docket no. 31) and the

Clerk of Court entered default against the domain names on August 29, 2011 (Docket no. 35).

Coach then filed a first motion for entry of final judgment (Docket no. 36) and an amended

motion for entry of final judgment (Docket no. 37).[1]  On August 31, 2011, the District Judge

ordered Coach to file a motion for default judgment and an accompanying memorandum and set

a hearing of the motion for default judgment and a hearing on damages on Friday, September 30,

2011.  (Docket no. 38).  On September 6, 2011, the undersigned ordered Coach to provide

> the legal authority it relies upon to support the joining of these
> defendants in one action under Federal Rule of Civil Procedure
> 20(a)(2). In particular, the arguments that the Anti-Cybersquatting
> Consumer Protection Act does not place a limit on the number of
> domain names that may be joined in an action and that other cases
> have involved multiple domain names (Docket no. 14) fail to
> address the underlying question of whether the claims being
> asserted against these defendants satisfy the requirement that they
> are "with respect to or arising out of the same transaction,
> occurrence, or series of transactions or occurrences." Plaintiffs
> shall respond directly to the proposition that "merely committing
> the same type of violation in the same way does not link
> defendants together for the purposes of joinder." *Laface Records,*
> *LLC v. Does 1-38*, 2008 WL 544992 (E.D. N.C. 2008).

---

[1] The amended motion modified the requested relief sought in Coach's first motion, praying that VeriSign, Inc., the
Public Interest Registry, and Neustar, Inc. be ordered "to register the remaining 360 defendants in the name of
Coach, Inc. *or to its assignees*." (*Cf.* Docket no. 36 at 1 *and* Docket no. 37 at 1).

The undersigned further stated that

> [i]n the event it is determined that joinder is proper and that dismissing the claims against defendants not arising out of the same transaction, occurrence, or series of transactions and occurrences under Rule 21 is not necessary, plaintiffs will need to submit sufficient evidence to the Court and be prepared to support their claims against *each individual defendant domain name*.

(Docket no. 39).  On September 20, 2011, an order was entered directing Coach to notice the hearing on its motion for default judgment and *ex-parte* proof of damages for 10:00 a.m. on Thursday, September 29, 2011.  (Docket no. 40).

On September 23, 2011, Coach filed a motion for entry of default judgment ("motion for default judgment"), an accompanying memorandum in support, and a notice of hearing for Thursday, September 29, 2011 at 10:00 a.m.  (Docket nos. 41, 42, and 43).  On September 27, 2011, Coach filed two notices of voluntary dismissal, dismissing with prejudice Coach's claims against four of the 360 defendant domain names.[2]  (Docket nos. 49 and 50).  The claims against the four defendant domain names were dismissed on September 28, 2011.  (Docket no. 51).  On September 29, 2011, counsel for Coach appeared at the hearing on the motion for default judgment before the undersigned magistrate judge and no claimant appeared on behalf of the remaining 356 domain name defendants.  (Docket no. 52).

### Factual Background

The following facts are established by the the second amended complaint (Docket no. 25), and the memorandum in support of the motion for default judgment (Docket no. 42). Plaintiff Coach, Inc. is a Maryland corporation with its principal place of business in New York,

---

[2] In its first notice of voluntary dismissal, Coach names four domain names and lists one (coachoutletoffer.com) twice: "coachchanelhandbags.com, coachoutletoffer.com, newcoachoutletstore.com, coachoutletoffer.com, and goodcoachbag.com."  (Docket no. 49).  In its second notice of voluntary dismissal, Coach names the same four domain names without repetition.  (Docket no. 50).

New York. (Second Amend. Compl. ¶ 8). Plaintiff Coach Services, Inc. is a Maryland corporation with its principal place of business in Jacksonville, Florida. (Second Amend. Compl. ¶ 9). At the time the second amended complaint was filed, the domain names were registered with various registrars to a number of different individuals at addresses in the United States and the People's Republic of China. (Second Amend. Compl. ¶¶ 11-21).

Coach is a manufacturer, marketer, and seller of fine leather and mixed material products including handbags, wallets, accessories, eyewear, footwear, jewelry, and watches. (Second Amend. Compl. ¶ 22). Coach's products are sold throughout the United States and in Virginia through its own specialty retail stores, department stores, catalogs, and through the Internet website <www.coach.com>. (*Id.*). Coach uses a variety of trademarks, trade dress, and design elements in connection with the advertisement and sale of its products, including the mark "COACH" for, *inter alia*, satchels, luggage, backpacks, retail store services, leather goods, men and women's clothing, and women's handbags (the "Coach Marks"). (Second Amend. Compl. ¶ 23). Coach asserts that it is the owner of a number of United States Federal Trademark Registrations for the Coach Marks (the "Coach Trademarks") and that the Coach Trademarks are valid, subsisting, in full force and effect, and incontestable pursuant to 15 U.S.C. § 1065. (Second Amend. Compl. ¶¶ 25 and 26). Coach stated that the defendant domain names incorporate the Coach Marks in their entirety, and many of the defendant domain names also include other phrases that describe goods sold by Coach under the Coach Marks, including "bags" and "handbags." (Second Amend. Compl. ¶¶ 11-21). Coach alleged that the defendant domain names are being used or have been used in connection with the sale of counterfeit Coach merchandise. (Second Amend. Compl. ¶¶ 38 and 40).

6

Coach asserts that it has expended substantial time, money, and other resources in developing, advertising, and otherwise promoting the Coach Marks. (Second Amend. Compl. ¶ 24). Coach claims that as a result of its substantial investment in developing and promoting the Coach Marks they have acquired strong secondary meaning. (*Id.*). Coach further claims that the Coach Marks are unique and distinctive when applied to products like those it produces. (Second Amend. Compl. ¶ 27).

Subsequent to Coach's use or registration of the Coach Marks in the United States, the current registrants of the domain names assumed control of the registrations. The registries for the domain names are VeriSign, Inc., Public Interest Registry, and Neustar, Inc., all located in Virginia. (Second Amend. Compl. ¶¶ 11-21). Coach claims that the domain names are being used with websites that sell counterfeit and infringing merchandise to the public that bear the Coach Trademarks. (Second Amend. Compl. ¶ 30). Coach further claims that the websites at the domain names have been designed to attract customers and cause them to purchase unauthorized merchandise bearing the Coach Trademarks. (Second Amend. Compl. ¶ 32).

### Proposed Findings and Recommendations

Rule 55 of the Federal Rules of Civil Procedure provides for the entry of a default judgment when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." Based on the failure of anyone to file a responsive pleading or claim to the domain names in a timely manner, the Clerk has entered a default. (Docket no. 35).

A defendant in default admits the factual allegations in the complaint. *See* Fed. R. Civ. P. 8(b)(6) ("An allegation – other than one relating to the amount of damages – is admitted if a responsive pleading is required and the allegation is not denied."); *see also GlobalSantaFe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003) ("Upon default, facts

alleged in the complaint are deemed admitted and the appropriate inquiry is whether the facts as alleged state a claim."). Rule 55(b)(2) of the Federal Rules of Civil Procedure provides that a court may conduct a hearing to determine the amount of damages, establish the truth of any allegation by evidence, or investigate any other matter.

### Joinder under Federal Rule of Civil Procedure 20

As an initial matter, this proposed findings of fact and recommendations must address the prescription that defendants may be joined in one action only if "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2).

The Supreme Court has generally encouraged joinder of claims, parties, and remedies in order to "entertain[] the broadest possible scope of action consistent with fairness to the parties." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966). However, the Federal Rules of Civil Procedure impose important limits on the right of a plaintiff to join multiple defendants in a single suit and courts have held that joinder is improper where there is no assertion that the multiple defendants have acted in concert. To satisfy the transaction or occurrence test under Rule 20(a)(2), there must be a logical relationship between the events giving rise to the cause of action against each defendant. When a plaintiff fails to plead or to prove such a logical relationship, the proper remedy is severance of any and all claims against unrelated defendants.

Federal Rule of Civil Procedure 20(a)(2) directs that multiple defendants may be joined in one action if: "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of **the same transaction, occurrence, or series of transactions or occurrences**; and (B) any question of law or fact common to all defendants will

arise in the action." Fed. R. Civ. P. 20(a)(2)(A)-(B) (emphasis added).  There are two tests that must be satisfied for joinder under Rule 20: first, a right to relief must be asserted against each defendant that relates to or arises out of the same transaction, occurrence or series of transactions or occurrences; and second, a question of law or fact common to all defendants must arise in the suit.  In this case there is no question that the claims asserted by Coach against the 356 remaining domain names do involve a common question of law – the validity of Coach's Trademarks.  The joinder issue in this case is whether the claims asserted by Coach against these 356 defendant domain names arise out of the same transaction, occurrence, or series of transactions or occurrences.

The Fourth Circuit has held that Rule 20 should be construed in light of its purpose, "to promote trial convenience and expedite the final determination of disputes, thereby preventing multiple lawsuits." *Saval v. BL Ltd.*, 710 F.2d 1027, 1031 (4th Cir. 1983) (quoting *Mosley v. General Motors Corp.*, 497 F.2d 1330, 1332 (8th Cir. 1974)).  While "absolute identity of events is unnecessary," the transaction or occurrence test of the rule permits only "reasonably related claims for relief by or against different parties to be tried in a single proceeding."  *Id.*  Whether joinder of defendants is proper under Rule 20 is a case-by-case determination committed to the sound discretion of the trial court.  *Id.*  In *Saval* the Fourth Circuit affirmed the trial court's finding that the transaction or occurrence test was not satisfied and that joinder was improper since the four cars involved in the warranty claims in dispute were purchased at different times, driven differently, and had different service histories.  *Id.*

The Supreme Court has provided an additional touchstone to be used in interpreting the "transaction or occurrence" test of Rule 20. The Supreme Court has stated in the analogous context of counterclaims under Federal Rule of Civil Procedure 13(a) that "transaction" is "a

word of flexible meaning.  It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship." *Moore v. New York Cotton Exchange*, 270 U.S. 593, 610 (1926).  The Eighth Circuit drew on the Supreme Court's interpretation of Rule 13(a) in stating that "all 'logically related' events entitling a person to institute a legal action against another generally are regarded as comprising a transaction or occurrence." *Mosley*, 497 F.2d at 1333.

However, the Rules do not permit plaintiffs to bring in one action claims against defendants that do not arise from the same transaction or occurrence, and this court and others have acted to limit the length to which the "logical relationship" test can be stretched when plaintiffs seek to join seemingly unrelated defendants.  The Fourth Circuit has stated that the district court has "discretion to deny joinder if it determines that the addition of the party under Rule 20 will not foster the objectives of the rule, but will result in prejudice, expense, or delay." *Aleman v. Chugach Support Services, Inc.*, 485 F.3d 206, 218 n. 5 (4th Cir. 2007) (quoting 7 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1652 (3d ed. 2001)).

In deciding whether to sever claims of trademark infringement and related Lanham Act violations against two separate defendants this court has recognized that while the Rules do not detail a standard for determining misjoinder, "courts have uniformly held that parties are misjoined when they fail to satisfy either of the preconditions for permissive joinder of parties set forth in [Federal Rule of Civil Procedure] 20(a)." *Colt Defense, LLC v. Heckler & Koch Defense, Inc.*, 2004 U.S. Dist. LEXIS 28690, at *9-*10 (E.D. Va. Oct. 22, 2004) (citing *Hanna v. Gravett*, 262 F. Supp. 2d 643, 647 (E.D. Va. 2000)).  In *Colt* the court noted that "the overwhelming authority from other jurisdictions indicates that allegations against multiple and

unrelated defendants for independent acts of patent, copyright and/or trademark infringement do not set forth claims arising from the same transaction or occurrence within the meaning of Rule 20(a)." *Id.* at *13. In that case the claims against the two defendants were premised on independent acts of infringement, false advertising, and unfair competition and there were no allegations in the complaint revealing a connection among the acts of one defendant and the acts of the other defendant. *Id.* at *14. The two defendants in *Colt* were separate companies that marketed and sold different products in competition with each other and there was no allegation that they were jointly and severally liable or that any collusive or cooperative activity between them led to plaintiff's claims. *Id.* Finding that the defendants were joined improperly the court stated that the plaintiff's claims that the two defendants committed identical acts of infringement focused not on whether the claims in the complaint arise from the same transaction or occurrence, but rather on whether common questions of fact or law exist and "[e]ven assuming such common questions might exist, they are insufficient to satisfy the same transaction test under Rule 20[a]." *Id.* Recognizing the plaintiff's argument for "judicial economy" in allowing the claims to proceed in a single action, the court stated that "to the extent that considerations of judicial economy can factor into the court's decision whether to sever the claims against Bushmaster [one of the defendants], they do so only after the plaintiff has first satisfied the requirements of Rule 20(a)." *Id.* at *16.

In *Bear Creek Technologies, Inc. v. RCN Communications*, 2011 WL 3626787 (E.D. Va. Aug. 17, 2011) this court found that plaintiff's joinder of 23 defendants in a patent infringement action did not satisfy the same transaction or occurrence test and was improper. While the plaintiff asserted the same patents against all the defendants, the defendants were independently owned and operated, they were not related entities, they did not sell the same products, nor were

there any legal or business relationships amongst the defendants to indicate they were acting in concert in connection with the infringement allegations. *Id*. at *5. Based on those facts the court found joinder to be improper and dropped the claims against all but the first named defendant.

This court has noted that Rule 20 "does not provide a plaintiff free license to join multiple defendants into a single lawsuit where the claims against the defendants are unrelated." *Hope v. Johnson*, 2009 WL 3805701, at *2 n.3 (E.D. Va. Nov. 12, 2009). In *Hope* the court stated that "a civil plaintiff may not name more than one defendant" in a complaint "unless one claim against each additional defendant is transactionally related to the claim against the first defendant and involves a common question of law or fact." *Id*. at *2 (citing *Garcia v. Munoz*, 2008 WL 2064476, at *3 (D.N.J. May 14, 2008).

As explained by the Eastern District of North Carolina in a case alleging claims of copyright infringement against multiple defendants in the same action, "merely committing the same type of violation in the same way does not link defendants together for purposes of joinder." *Laface Records, LLC, v. Does 1-38*, 2008 WL 544992, at *2 (E.D. N.C. 2008). This court cited the *Laface* decision in two recent copyright cases and adopted its reasoning that merely committing the same type of violation in the same way does not satisfy the same transaction or occurrence requirement in Rule 20. *Raw Films, Ltd. v. John Does 1-32*, 3:11cv532 (JAG) (E.D. Va. Oct. 5, 2011); *Hard Drive Productions, Inc. v. John Does 1-30*, 2011 WL 4915551 (E.D. Va. Oct. 17, 2011).

Once defendants have been joined in error, Rule 21 provides that severance of claims is the proper remedy, and the court may act *sua sponte* or on a motion. Rule 21 provides that while "[m]isjoinder of parties is not a ground for dismissing an action . . . the court may at any time, on just terms, add or drop a party." Fed. R. Civ. P. 21. There are multiple examples of misjoinder

in cases in which plaintiffs claimed to have suffered similar harm from the actions of multiple defendants or in cases where plaintiffs sought to join multiple defendants who committed similar acts. For example, the *Laface* court ordered all defendants but one severed from a suit which alleged copyright infringement by 38 defendants known only by the Internet Protocol address at which each defendant allegedly downloaded plaintiffs' copyrighted music. *Laface*, 2008 WL 544992, at *2; *see also*, *Fonovisa, Inc. v. Does 1-9*, 2008 WL 919701, at *6 (W.D. Pa. 2008) (severing 8 of 9 defendants and stating in conclusion that "given the different factual contexts of the alleged infringement for each Defendant and the absence of any evidence showing joint action by Defendants . . . the Court finds that Plaintiffs have failed to satisfy the requirements for permissive joinder under Rule 20(a)."). Severing the claims against unrelated defendants in "John Doe" copyright cases was the remedy also applied by this court in *Raw Films*, 3:11cv532 and *Hard Drive*, 2011 WL 4915551.

Moreover, courts have found misjoinder in cases in which the identities of the defendants were readily known but the claims nonetheless failed to satisfy the two-part test for permissive joinder under Rule 20. In evaluating a "50-claim, 24-defendant" civil rights suit filed by a prisoner *pro se*, this court held that under the Prison Litigation Reform Act, Rule 12(b)(6), and Rule 20 the complaint's many defects required dismissal without prejudice of all but one cause of action. *Jackson v. Olsen*, 2010 WL 724023, at *8-*9 (E.D. Va. Mar. 1, 2010). The court admonished the plaintiff to "not name more than one defendant in his second amended complaint unless one claim against each additional defendant is transactionally related to the claim against the first defendant, and involves a common question of law or fact." *Id.* at *9.[3]

---

[3] In *Bear Creek* this court also dropped the claims against all but the first named defendant when it found that joinder of the remaining defendants was improper under Rule 20(a). *Bear Creek*, 2011 WL 3626787.

While it is true that the provisions of the ACPA do not limit the number of domain names that may be joined in an *in rem* proceeding, the provisions in the ACPA do not in any way do away with the requirements of Rule 20.[4] In the second amended complaint, Coach divided the 360 domain names into 11 seemingly unrelated sub-groups. (Docket no. 25 at ¶ 10). Coach asserts that the domain names in each sub-group are similar in at least one respect; for instance, their registrants use a particular geographic location in their allegedly fictitious postal addresses (the "Shanghai Group," the "Guangdong Group," the "Foreignness Group," the "United States Group," the "Fujian Group," the "Hong Kong Group," the "Zhengzhou Group," and the "Beijing Group"); the domain names share the same registrar (the "Foreignness Group"); or their registrants' use the same e-mail address, portion of an e-mail address, or a logogram as their postal address (the "173916647@qq.com Group," the "@123 Group," and the "@qq.com Group"). (Docket no. 25 at ¶¶ 11-21). The "interconnectedness" of certain sub-groups is also demonstrated, Coach asserts, by the "similarities of the infringing domain names [or] the appearance and composition of the sites."[5] (*Id.*).

Perhaps more telling for the purposes of this analysis, however, is Coach's assertion (or admission) that for each sub-group some or all of the registrants' names are different and that in every case "each listed address and/or registrant name is, upon information and belief, fictitious based on the 'return to sender' notices that Coach received in response to its attempts to reach the listed registrants by postal mail." (Docket no. 25 at ¶¶ 11-21). Notwithstanding whatever

---

[4] It is also true that several ACPA cases have been decided in this court involving multiple domain names. However, there is nothing in the ACPA that provides for special treatment for joinder in *in rem* domain name cases and Rule 20 should be applied consistently regardless of the type of claim being asserted. As the court has seen recently, plaintiffs in various other types of cases have been relying on the court's approach in allowing multiple defendants in ACPA cases to argue in favor of joinder in other types of cases.

[5] This is not true of the "United States Group," where the relevant similarity is between those domain names with "wholly fictitious" registrant names and the domain names with "seemingly legitimate registrant names and postal addresses." Docket no. 25 at ¶ 14.

legitimate inference that one may draw from this fact, none of the evidence presented by Coach raises its "basic allegation" that the domain name registrants "have each committed the illegal act of cyber-squatting, using the same means and having the same purpose in committing the illegal act" to a level that satisfies the "transaction or occurrence" test under Rule 20. (Docket no. 42 at 14). Indeed, Coach's blanket assertion that the websites maintained by *all* of the "Infringing Domain Names are confusingly similar to the Coach Trademarks" (*i.e.*, that the websites located at each of the domain names infringe on Coach's registered Marks) (Docket no. 42 at 3) is inconsistent with the proposition that "merely committing the same type of violation in the same way does not link defendants together for the purposes of joinder." *Laface*, 2008 WL 544992, at *2. Simply put, the evidence presented is insufficient to establish that Coach's claims against *all* of the defendant domain names are related, that they arise from the same transaction or occurrence, or that there is any joint action among *all* the defendant domain names that warrants relief under the ACPA in a single action. And despite Coach's efforts to proffer sufficient evidence to the contrary, the sub-groupings asserted in the second amended complaint are essentially, transparently, and admittedly arbitrary. Furthermore, there has been no real attempt to connect the eleven different sub-groups to justify bringing those eleven different groups in the same action. A review of the websites available at the 356 defendant domain names does not support a finding that *all* of the websites (even in the same subgroup) are identical or similar enough to infer that they are owned or operated by the same person or entity. Accordingly, any inference as to joint action by the defendant domain names that may be drawn is remote at best and does not withstand the defendant-by-defendant analysis required by Rule 20.

While Coach's claims against the vast majority of the defendant domain names are not "reasonably related" and joinder is therefore improper under Rule 20, the court finds the

15

evidence presented sufficient to conclude that one group of 11 domain names (the "Merry/Liny domain names") does appear to satisfy Rule 20's "transaction or occurrence" test as articulated by the Supreme Court and the courts of this Circuit. As the chart below demonstrates, these domain names appear to have been registered by the same person and they share a number of similarities (in addition to those already addressed *en masse* by Coach in its second amended complaint) that support the contention that the illegal activity complained of here arose out of the same "transaction or occurrence" and that the claims against those domain names are logically related.

| Amend. Compl. ¶ | URL | Registrant | Registrant E-mail | Street Address | City, Postal Code, Country | Registrar |
|---|---|---|---|---|---|---|
| 16(c) | coachbags-shoppe.com | Merry Liny | merryt400@gmail.com | Madole Street 101 | Hong Kong 121212 China | XIN NET TECHNOLOGY CORPORATION |
| 16(d) | coachhandbagsshoppe.com | Merry Liny | merryt400@gmail.com | Madole Street 101 | Hong Kong 121212 China | HICHINA ZHICHENG TECHNOLOGY LTD |
| 16(e) | coachhandbags-usa.com | Merry Liny | merryt400@gmail.com | Madole Street 101 | Hong Kong 121212 China | HICHINA ZHICHENG TECHNOLOGY LTD |
| 16(f) | coachoutlet-discount.net | Merry Liny | merryt400@gmail.com | Madole Street 101 | Hong Kong 121212 China | XIN NET TECHNOLOGY CORPORATION |
| 16(g) | coachoutlet2011.net | Merry Liny | merryt400@gmail.com | Madole Street 101 | Hong Kong 121212 China | XIN NET TECHNOLOGY CORPORATION |
| 16(h) | coachoutletdiscount.com | Merry Liny | merryt400@gmail.com | Madole Street 101 | Jiulong, Hong Kong 121212 | XIN NET TECHNOLOGY CORPORATION |
| 16(i) | coachoutlet-discount.net | Merry Liny | merryt400@gmail.com | Madole Street 101 | Jiulong, Hong Kong 121212 | XIN NET TECHNOLOGY CORPORATION |
| 16(k) | coachoutlet-us.com | liny merry | merryt400@gmail.com | madole street 101 | madole, Hong Kong 121212 | HICHINA ZHICHENG TECHNOLOGY LTD |
| 16(l) | coachoutlet-us.org | liny merry | merryt400@gmail.com | Madole Street 101 | Hong Kong 121212 China | Hichina Zhicheng Technology Limited |
| 18(j) | coachoutletshoppe.org | Merry Liny | chicken23@163.com | Madole Street 101 | Beijing 121212, China | XIN NET TECHNOLOGY CORPORATION |
| 21(f) | coachhandbagshoppe.com | liny merry | 172109625@qq.com | madole strret 101, madole strret 101 | Liyuan Ziaoqu 351100 China | XIN NET TECHNOLOGY CORPORATION |

Significantly, these domain names share a common registrant ("Merry Liny" or "liny merry"), ten of the eleven share a registrant e-mail ("merry400@gmail.com"), all of them share

"M/madole S/street 101" or some near-identical variant as their postal street address, all of them share identical postal codes ("121212") in either Hong Kong or Beijing, and all share one of two registrars.  (Docket no. 25 at ¶¶ 16(c)-(i), (k) and (l); 18(j); and 21(f)).[6]

For these reasons, the undersigned recommends a finding that joinder is inappropriate as to 345 of the domain name defendants and that the claims against those domain names should be severed from the instant action.[7]  The undersigned further recommends a finding that joinder is appropriate as to the 11 Merry/Liny domain names identified above, and proceeds to consider the court's jurisdiction over those 11 domain name defendants, as well as the sufficiency of service on them and the grounds for entry of default against them.  In the event the recommendation on the joinder issues is not adopted and joinder is found to be appropriate in this case, the undersigned will prepare proposed findings of fact and recommendations that address each of the 356 remaining defendant domain names.

## Jurisdiction and Venue

A court must have both subject matter and personal or *in rem* jurisdiction over a defaulting defendant before it can render a default judgment.  Coach's claims arise under the ACPA, 15 U.S.C. § 1125(d), and this court has jurisdiction over the subject matter of this action under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a).

The court has *in rem* jurisdiction over the Merry/Liny domain names under 15 U.S.C. § 1125(d)(2).  The first required element for *in rem* jurisdiction over a domain name exists where the domain name violates any right of the owner of a mark registered with the Patent and

---

[6] As discussed below, several of the Merry/Liny domain names resolve to the same website or to websites that have very similar designs and appear to offer identical counterfeit products.

[7] A review of the remaining 345 defendant domain names reveals that there may be other groups of domain names that could satisfy the same transaction or occurrence test if an individualized analysis was performed.  For example, if several domain names resolve to the same website that may be sufficient evidence to support an allegation that the domain names are controlled by the same person or entity or that they are acting in concert.

Trademark Office. *See* 15 U.S.C. § 1125(d)(2)(A)(i).  Coach owns a number of federally-registered trademarks and it claims that its rights in those marks are being violated by the registration and use of the Merry/Liny domain names.  The ACPA also conditions *in rem* jurisdiction upon a finding that the trademark owner is unable to obtain personal jurisdiction over a person who would otherwise be a defendant in a civil action under the ACPA or through due diligence cannot find the person who would have been a defendant in such an action, having sent that person postal and electronic notice of both the alleged violation and the owner's intent to sue. *See* 15 U.S.C. § 1125(d)(2)(A)(ii).  Given that the current registrant of the Merry/Liny domain names resides in China and does not appear to have any ongoing business activities in the United States, Coach has established that it is unable to obtain personal jurisdiction over the registrant of the Merry/Liny domain names.

Venue is proper in this district under 15 U.S.C. § 1125(d)(2)(C)(i), which places venue for an *in rem* ACPA action in the judicial district in which the domain name's registrar, registry, or other domain name authority that registered or assigned the domain name is located. VeriSign, Inc. is the registry for the <.com> and <.net> top level domains.  Public Industry Registry is the registry for the <.org> top level domain.  VeriSign and Public Industry Registry have offices within this district and division and are the exclusive registries controlling the Merry/Liny domain names.

For these reasons, the undersigned magistrate judge recommends a finding that this court has subject matter jurisdiction over this action, that the court has *in rem* jurisdiction over the Merry/Liny domain names, and that venue is proper in this court.

### Service

In support of Coach's second amended complaint, Donald A. Cole executed a declaration ("Cole Decl.") stating that he supervised the mailing of 418 cease-and-desist letters addressed to the registered owners of the defendant domain names named in the second amended complaint, including the Merry/Liny domain names. (Cole Decl. at ¶ 3; *see also* Second Amend. Compl. at ¶¶ 11-21 (stating that the letters were sent by "postal mail")). No correspondence or response was received from the registered owner of the Merry/Liny domain names challenging Coach's allegations as alleged in the cease-and-desist letters. (Cole Decl. at ¶¶ 4 and 5).

Copies of the cease-and-desist letters sent to the registered owners of the defendant domain names were attached as Exhibit B to Coach's first amended complaint. (Docket no. 2 at ¶ 493). Exhibit B shows that 9 letters were e-mailed to merryt400@gmail.com, the registrant's e-mail address for <coachbags-shoppe.com>, <coachhandbagsshoppe.com>, <coachhandbags-usa.com>, <coachoutlet-discount.net>, <coachoutlet2011.net>, <coachoutletdiscount.com>, <coachoutlet-discount.net>, <coachoutlet-us.com>, and <coachoutlet-us.org>. (Docket no. 2-2 at 87, 140, 143, 158, 160, 172, and 175; docket no. 2-3 at 31 and 34). One letter was e-mailed to chicken23@163.com, the registrant e-mail address for <coachoutletshoppe.org>. (Docket no. 2-3 at 14). And one letter was e-mailed to 172109625@qq.com, the registrant e-mail address for <coachhandbagshoppe.com>. (Docket no. 2-2 at 131).

On July 6, 2011, Coach filed an *ex parte* motion for order to publish notice of action and a memorandum in support. (Docket nos. 26 and 27). On July 8, 2011, an order was entered directing Coach to provide notice of this action by publication in accordance with the ACPA. (Docket no. 28). The order providing notice of this action was published in *The National Law Journal* on July 25, 2011, and on August 4, 2011 Coach filed with the court an affidavit

describing compliance with the order directing publication of notice of this action. (Docket no. 30). As set forth in the notice of action, any person claiming an interest in the domain names – including the Merry/Liny domain names – was required to file an answer or other response to the complaint within 21 days from the date of the publication of the order in *The National Law Journal.* The 21 day time period for filing an answer or claim expired on August 16, 2011.

The ACPA provides that service of process in an *in rem* action may be accomplished by sending a notice of the alleged violation and intent to proceed under the ACPA to the registrant of the domain name at the postal and e-mail address provided by the registrant to the registrar and by publishing notice of the action as the court may direct promptly after filing the action. 15 U.S.C. § 1125(d)(2)(B). Coach has complied with these provisions. For these reasons the undersigned recommends a finding that service of process as to the Merry/Liny defendants has been accomplished in this action.

### Grounds for Entry of Default

Under Fed. R. Civ. P. 12(a) and as stated in the order of publication, anyone asserting a claim to the Merry/Liny domain names was required to file an answer or response with the Clerk by August 16, 2011, 21 days after the notice was published. No responsive pleading or claim was filed by either a named registrant or anyone else claiming ownership to the Merry/Liny domain names and on August 18, 2011, Coach filed its request for entry of default. (Docket no. 31). The Clerk of the Court entered a default on August 29, 2011. (Docket no. 35). The motion for default judgment, supporting memorandum, and the notice of hearing for September 29, 2011 were filed on September 23, 2011. (Docket nos. 41, 42, 43). Copies of the motion for default judgment and the notice of hearing were also sent to the registrant of the Merry/Liny domain names at the registrant's last known address on September 23, 2011. (Docket nos. 41 and 43).

The undersigned magistrate judge recommends a finding that notice of this *in rem* action was provided properly, that no one filed a responsive pleading or claim to the Merry/Liny domain names in a timely manner, and that the Clerk properly entered a default as to the Merry/Liny domain names.

## Liability and Relief Sought

According to Fed. R. Civ. P. 54(c), a default judgment "must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Because no responsive pleading was filed, the factual allegations in the second amended complaint are deemed admitted. *See* Fed. R. Civ. P. 8(b)(6). The relief sought in the second amended complaint is for the court to order the registries (VeriSign, Inc. and Public Interest Registry) to require the registrars for the Merry/Liny domain names to transfer the registrations for the Merry/Liny domain names to Coach or its assignee. The notice that was published pursuant to the ACPA provided that one of the remedies available under the ACPA was the transfer of the Merry/Liny domain names to the plaintiffs in this action. (Docket nos. 28 and 30).

To state a claim under the ACPA, Coach must prove that the Merry/Liny domain names and/or their registrant(s) registered, trafficked in, or used the Merry/Liny domain names with a bad faith intent to profit and that the Merry/Liny domain names are either identical or confusingly similar to a distinctive mark owned by Coach, or, upon a finding that a mark owned by Coach is famous, that the Merry/Liny domain names are identical or confusingly similar to, or dilutive of, Coach's famous mark. *See* 15 U.S.C. § 1125(d)(1)(A); *see also People for the Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 367 (4th Cir. 2001). The registrations of the Coach Marks on the Principal Register are *prima facie* evidence that the marks are at least

descriptive and have acquired distinctiveness. *America Online, Inc. v. AT&T Corp.*, 243 F.3d

812, 816 (4th Cir. 2001).

A trademark is distinctive if it is either "inherently distinctive," by virtue of it being

neither generic nor descriptive, or if it has a "secondary meaning" and has thus become

distinctive based on its use in commerce over a period of time. *Harrods Ltd. v. Sixty Internet*

*Domain Names*, 157 F. Supp. 2d 658, 668 (E.D. Va. 2001) (citing *Ashley Furniture Indus. v.*

*Sangiacomo N.A., Ltd.*, 187 F.3d 363, 368-69 (4th Cir. 1999)), *aff'd in part, rev'd in part*, 302

F.3d 214 (4th Cir. 2002). Secondary meaning is typically found where there are extensive

advertising expenditures, sales successes, attempts to plagiarize a mark, and where a mark has

been used exclusively for an extended period of time. *See, e.g., Perini Corp. v. Perini Constr.*

*Inc.*, 915 F.2d 121, 125 (4th Cir. 1990) (enumerating several factors relevant to the "secondary

meaning" inquiry).

Here, Coach obtained registrations for the Coach Marks as shown in Exhibit A to the

original complaint. (Docket no. 1). Coach states that since its founding 70 years ago, it has used

the Coach Marks in interstate commerce in connection with its products. (Second Amend.

Compl. ¶¶ 22, 23). Coach also states that it has invested substantial time, money, and other

resources in developing, advertising, and otherwise promoting the Coach Marks, including

through its domain name <coach.com>. (Second Amend. Compl. ¶¶ 22-24). For these reasons

the undersigned magistrate judge recommends a finding that the Coach Marks are distinctive.

Having found that the Coach Marks are distinctive, it is not necessary for a resolution of these

claims to reach the question of whether the Coach Marks are famous.

The next consideration is whether Merry/Liny domain names are identical or confusingly

similar to the Coach Marks. Here, a comparison of the Merry/Liny domain names and the Coach

Marks establishes that each of the Merry/Liny domain names is confusingly similar as a website user would reasonably assume that the qualifiers added to the Coach Mark ("shoppe," "bags," "handbags," "outlet," "us," "usa," "discount," and "2011") were added by Coach, the trademark holder. *See Harrods*, 157 F. Supp. 2d at 677-78 ("A visual comparison of each of the defendant Domain Names with the HARRODS trademark leads to the indisputable conclusion that the Domain Names are confusingly similar to plaintiff's mark and a website user would reasonably assume that the qualifier added to the HARRODS mark was one added by Harrods Limited, the trademark holder").

The Merry/Liny domain name <coachbags-shoppe.com> includes the Coach Mark and the qualifiers "bags" and "shoppe." The website located at this domain name offered counterfeit Coach handbags and other counterfeit Coach merchandise for sale. (Coach Hearing Ex. 87).[8]

The Merry/Liny domain name <coachhandbagsshoppe.com> includes the Coach Mark and the qualifiers "handbags" and "shoppe." The exhibits submitted at the hearing on Coach's motion for entry of default judgment for this domain name demonstrate that at one time this domain name was used to redirect visitors to other websites (<www.coachoutletestore.com> and <coachoutlet-eu.net>) where counterfeit Coach wallets, card cases, handbags, and jewelry were offered for sale. (Coach Hearing Ex. 150).

The Merry/Liny domain name <coachhandbags-usa.com> includes the Coach Mark and the qualifiers "handbags" and "usa." The website located at this domain name offered counterfeit Coach handbags, wallets, and other counterfeit Coach merchandise for sale. (Coach Hearing Ex. 155).

---

[8] At the evidentiary hearing on September 29, 2011 Coach filed with the court six binders of exhibits with information concerning each defendant domain name, including screenshots of the websites available at those domain names. While the websites currently available at these domain names may have changed since the exhibits were prepared, the undersigned will rely on those exhibits to show what infringing conduct has occurred in the past. Those exhibits will be referred to as "Coach Hearing Ex. _").

The Merry/Liny domain name <coachoutlet-discount.net> includes the Coach Mark and the qualifiers "outlet" and "discount."   The website located at this domain name offered counterfeit Coach shoes, jewelry, and handbags for sale. (Coach Hearing Ex. 174).

The Merry/Liny domain name <coachoutlet2011.net> includes the Coach Mark and the qualifiers "outlet" and "2011."   The website located at this domain name offered counterfeit Coach handbags, wallets, and other counterfeit Coach merchandise for sale. (Coach Hearing Ex. 178).

The Merry/Liny domain name <coachoutletdiscount.com> includes the Coach Mark and the qualifiers "outlet" and "discount."  The exhibits submitted at the hearing on Coach's motion for entry of default judgment for this domain name demonstrate that at one time this domain name was used to redirect visitors to another website hosted at the domain name <www.coachoutlet-2011.net> where counterfeit Coach handbags and wallets were offered for sale. (Coach Hearing Ex. 190). The website at this domain name is very similar to the website located at the Merry/Liny domain name <coachhandbags-usa.com>. (Coach Hearing Ex. 155).

The Merry/Liny domain name <coachoutlet-discount.net > includes the Coach Mark and the qualifiers "outlet" and "discount."  The exhibits submitted at the hearing on Coach's motion for entry of default judgment for this domain name demonstrate that at one time this domain name was used to redirect visitors to another website hosted at the domain name <www.coachoutlet-2011.net> where counterfeit Coach handbags and wallets were offered for sale. (Coach Hearing Ex. 193). The website at this domain name is very similar to the website located at Merry/Liny domain name <coachhandbags-usa.com> and is identical to the website located at Merry/Liny domain name <coachoutletdiscount.com>. (Coach Hearing Exs. 155, 190).

The Merry/Liny domain name <coachoutlet-us.com> includes the Coach Mark and the qualifiers "outlet" and "us." The website located at this domain name offered counterfeit Coach handbags and wallets for sale. (Coach Hearing Ex. 254).

The Merry/Liny domain name <coachoutlet-us.org> includes the Coach Mark and the qualifiers "outlet" and "us." The exhibits submitted at the hearing on Coach's motion for entry of default judgment for this domain name demonstrate that at one time this domain name was used to redirect visitors to another website hosted at the domain name <www.coachhandbagshop.com> where counterfeit Coach handbags were offered for sale. (Coach Hearing Ex. 257).

The Merry/Liny domain name <coachoutletshoppe.org> includes the Coach Mark and the qualifiers "outlet" and "shoppe." The website located at this domain name offered counterfeit Coach handbags and wallets for sale. (Coach Hearing Ex. 233).

The Merry/Liny domain name <coachhandbagshoppe.com> includes the Coach Mark and the qualifiers "handbags" and "shoppe." The website located at this domain name offered counterfeit Coach handbags and wallets for sale. (Coach Hearing Ex. 137).

Based on the uncontested allegations in the second amended complaint and the exhibits submitted in support of the motion for entry of default judgment, the undersigned magistrate judge recommends a finding that each of the Merry/Liny domain names is confusingly similar to the Coach Mark. Each of the defendant domain names incorporates the Coach Mark in its entirety, and many of the defendant domain names also include other words that describe goods and services sold by plaintiffs under the Coach Marks, including "bags," "handbags," "discount," "shoppe," and "outlet." Further, the registration and use of each Merry/Liny domain name is likely to cause confusion among the public, including customers of Coach, because the

"dominant or salient portions" of the domain names and the Coach Marks are identical. *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 936 (4th Cir. 1995) (citing *Pizzeria Uno Corp. v. Temple*, 747 F.2d 1522, 1527 (4th Cir. 1984)). Accordingly, "a finding of a likelihood of confusion is appropriate despite the fact that collateral portions of the mark may differ." *Atlas Copco AB v. Atlascopcoiran.com*, 533 F. Supp. 2d 610, 614 (E.D. Va. 2008) (citing *Lone Star*, 43 F. 3d at 936) (finding that the addition of generic geographic terms to plaintiff's registered mark did not distinguish the defendant domain names from the registered marks).

Having recommended a finding that the Coach Marks are distinctive and that the Merry/Liny domain names are confusingly similar to the Coach Marks, the remaining question is whether the Merry/Liny domain names were registered or used with bad faith intent to profit. For at least the following reasons, the undersigned recommends a finding that the Merry/Liny domain names were registered and used with the bad faith intent to profit from the Coach Marks:

1.     The Coach Marks, which have been incorporated into the Merry/Liny domain names, are distinctive within the meaning of 15 U.S.C. § 1125(d)(1)(B)(i)(IX);

2.     The registrant of the Merry/Liny domain names does not have any valid trademark or intellectual property rights in the Coach Marks or the Merry/Liny domain names within the meaning of 15 U.S.C. § 1125(d)(1)(B)(i)(I);

3.     None of the Merry/Liny domain names consist of the registrant's legal name, nor do they in any way identify the registrant within the meaning of 15 U.S.C. § 1125(d)(1)(B)(i)(II);

4      The registrant has not used the Merry/Liny domain names in connection with the *bona fide* offering of any goods or services within the meaning of 15 U.S.C. §

1125(d)(1)(B)(i)(III) in that each of the websites is offering or has offered counterfeit Coach goods for sale;

5.      The registrant have not used the Merry/Liny domain names for *bona fide* noncommercial purposes or within the fair use provisions of 15 U.S.C. § 1125(d)(1)(B)(i)(IV);

6.      The registrant's intent in obtaining the registrations for the Merry/Liny domain names and using those domain names was to divert Coach's consumers and to profit from the goodwill of the Coach Marks, within the meaning of 15 U.S.C. § 1125(d)(1)(B)(i)(V);

7.      The registrant has provided material and misleading false contact information in applying for the registrations of the domain names within the meaning of 15 U.S.C. § 1125(d)(1)(B)(i)(VII); and

8.      The registrant has registered or acquired more than one domain name known to be confusingly similar to the Coach Marks within the meaning of 15 U.S.C. § 1125(d)(1)(B)(i)(VIII).

The ACPA provides that, upon a finding of a violation, the court has discretion to cancel the domain name registration or order it transferred to the trademark owner.  15 U.S.C. § 1125(d)(1); *Harrods Ltd. v. Sixty Internet Domain Names,* 302 F.3d 214, 232 (4th Cir. 2002) ("Transfer or cancellation of the defendant domain name[] is the only remedy available under § 1125(d)(2)'s *in rem* provision").  For these reasons, the undersigned magistrate judge recommends (1) a finding that the registrant's actions have violated the ACPA; (2) that an order be entered requiring VeriSign, Inc. to require the current registrars for the domain names <coachbags-shoppe.com>, <coachhandbagsshoppe.com>, <coachhandbags-usa.com>, <coachoutlet-discount.net>, <coachoutlet2011.net>, <coachoutletdiscount.com>, <coachoutlet-discount.net>, <coachoutlet-us.com>, and <coachhandbagshoppe.com> to transfer those

registrations to Coach or its assignee; and (3) that an order be entered requiring Public Interest Registry to require the current registrars for the domain names <coachoutlet-us.org> and <coachoutletshoppe.org> to transfer those registrations to Coach or its assignee.

## NOTICE TO PARTIES

Failure to file written objections to these proposed findings of fact and recommendations within 14 days after being served with a copy of these proposed findings of fact and recommendations may result in the waiver of any right to a *de novo* review of these proposed findings and recommendations and such failure shall bar you from attacking on appeal any findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.

A copy of these proposed findings of fact and recommendations shall be sent to the registrant of the Merry/Liny domain names.

Entered this __ day of November, 2011.

/s/

John F. Anderson
United States Magistrate Judge

Alexandria, Virginia